UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

    Hadi D. Lebbos,                                         Case No:    09-58805-wsd
                                                                 Ch. 7

    Debtor.
_____/

Basil T. Simon, Trustee,

    Plaintiff,
v.                                                           Adv. Pro. No. 09-06145-wsd

JP Morgan Chase Bank, National
Association, a National Banking Association,

    Defendant.
_____/

### Opinion Denying Defendant's Motion for Summary Judgment and
### Granting Trustee's Motion for Summary Judgment under 11 U.S.C. § 547

       The Chapter 7 Trustee filed this adversary proceeding to obtain a judgment avoiding and setting aside a notice of lis pendens recorded by Defendant, JP Morgan Chase Bank, National Association ("JP Morgan"), against the Debtor's primary residence under 11 U.S.C. § 547 or, in the alternative, for a declaratory judgment that JP Morgan's interest was unperfected and inferior to the Trustee's rights under subsections (1) through (3) of 11 U.S.C. § 544(a). In its answer to the complaint, JP Morgan admitted that its notice of lis pendens was recorded within the 90 day statutory preference period, but raised several affirmative defenses.

       Pending before the Court are cross motions for summary judgment. For the reasons explained in this opinion, the Court denies JP Morgan's summary judgment motion and grants the Trustee's motion for summary judgment under 11 U.S.C. § 547.

### Jurisdiction

       The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (K).

Facts

The parties do not dispute the relevant facts and thus the issue is a legal one. On June 15, 2009, Hadi Lebbos ("Debtor") filed his Chapter 7 bankruptcy petition. The Debtor owns a home located at 29232 Lyndon, Livonia, Michigan ("the Property"). The Property is located in Wayne County, Michigan. On August 13, 2004, Debtor and his then spouse, Julie Lebbos obtained a $160,000 loan from Washington Mutual Bank, FA ("WAMU"). To secure payment of the loan, the Debtor and his spouse granted a mortgage on the Property to WAMU. On September 14, 2004, WAMU or its agent incorrectly recorded the mortgage with the Macomb County Register of Deeds instead of with the Wayne County Register of Deeds as required by the fact that the Property is located in Wayne County.

Several years later, WAMU discovered that the mortgage had been recorded in the wrong county and on March 11, 2009, it filed a Claim of Interest with the Wayne County Register of Deeds pursuant to Mich. Comp. Laws § 565.451a. WAMU attached to its Claim of Interest an Exhibit A, which consisted of a copy of the mortgage containing the bar code stamp, liber and page number affixed by the Macomb County Register of Deeds.

In May 2009, WAMU filed a lawsuit seeking a declaratory judgment and to compel the Debtor to execute a new mortgage to allow it to be properly recorded with the Wayne County Register of Deeds. Attached as exhibit A to the lawsuit was a copy of a notice of lis pendens, which WAMU requested it be permitted to record with the Wayne County Register of Deeds. On May 8, 2009, the notice of lis pendens ("Lis Pendens") was recorded with the Wayne County Register of Deeds at Liber 47902, pages 342-43. At some unknown point, JP Morgan became the successor in interest to WAMU.

On June 15, 2009, the Debtor filed his Chapter 7 bankruptcy petition and Plaintiff, Basil Simon, was appointed as the Chapter 7 Trustee. On July 8, 2009, JP Morgan filed a motion for relief from the automatic stay. The Trustee did not file a response to or otherwise oppose that motion and upon the filing of a certificate of non-response by JP Morgan, this Court entered an order on July 28, 2009, granting JP Morgan the stay relief sought. Thereafter, the Debtor executed a new mortgage on the Property to JP Morgan, which was recorded with the Wayne County Register of Deeds on September 2, 2009.

On September 23, 2009, the Trustee filed this adversary proceeding against JP Morgan.

2

On that same day, the Trustee filed a motion seeking to set aside the order granting relief from the automatic stay, which JP Morgan opposed. On December 10, 2009, this Court issued an opinion and order denying the Trustee's motion to set aside the order granting JP Morgan relief from the automatic stay.

In its answer to the complaint, JP Morgan also raised several affirmative defenses: (1) it asserted that the Trustee was barred from pursuing his preferential transfer and avoidance claims based on res judicata grounds; and (2) it asserted that the Trustee would be unable to establish an essential element under either of his § 547 or § 544 causes of action because its interest in the Property had been perfected once it recorded its Claim of Interest with the Wayne County Register of Deeds.

The Trustee has moved for summary judgment, as has JP Morgan.

Applicable Law:
Cross-Motions for Summary Judgment

Fed. R. Bankr. P. 7056 incorporates and applies Fed. R. Civ. P. 56 for summary judgment in adversary proceedings. Under Rule 56(a), a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d (1986).

The standard for summary judgment does not change when a court is presented with cross-motions for summary judgment. *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010). When reviewing cross-motions for summary judgment, "a court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Appoloni v. U.S.*, 450 F.3d 185, 189 (6th Cir. 2006) (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)).

> "The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. 'When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"

*Parks v. LaFace Records*, 329 F.3d 437, 444-45 (6th Cir. 2003) (quoting *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001) (citing 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE, § 2720 (3d ed. 1998))). "At the same time, 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Greer v. United States,* 207 F.3d 322, 326 (6th Cir. 2000) (quoting *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)).

## Discussion

A.  *Whether res judicata is a bar to the Trustee's actions under 11 U.S.C. §§ 547 and 544*

JP Morgan argues that the same issues embodied in the Trustee's claims under 11 U.S.C. § 547 and § 544 were presented incident to its motion for relief from the automatic stay and were thus litigated at the time that uncontested motion was before the Court. Thus, it argues, due to the Trustee's failure to contest its motion, this Court's order granting it relief from the automatic stay is a final order precluding the Trustee from subsequently re-litigating all claims, issues, and defenses that could, or should, have been raised at the time it moved for relief from the automatic stay.

The Trustee disagrees and contends that JP Morgan overstates the limited determination made by a bankruptcy court when it grants relief from the automatic stay under § 362(d), asserting that the validity and avoidability of JP Morgan's lien were never litigated and could not have been litigated in the context of a motion for relief from the automatic stay, and thus, JP Morgan cannot establish two of the required elements of res judicata.

The doctrine of res judicata has been broadly described in case law to refer to separate preclusion concepts known as claim preclusion (res judicata) and issue preclusion (collateral

4

estoppel). To avoid any confusion between these different preclusion concepts, this opinion refers to the term res judicata as being synonymous with, and limited to, claim preclusion. As explained by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S. Ct. 1808, 1814 (2001):

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.

In the Sixth Circuit, a claim is barred by the res judicata effect of prior litigation if each of these four elements are established: "'(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). A party asserting res judicata as a defense bears the burden of proving each element. *Id.* at 772.

The first element of res judicata is not satisfied because while the order granting relief from the automatic stay is a final order (*see In re Sun Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986)), its scope and effect is determined and limited to the merits and grounds raised by JP Morgan in its motion (which are more fully hereinafter explained in the Court's analysis of the third element of res judicata).

The second element is satisfied. Both the Trustee and JP Morgan were parties in interest in the bankruptcy case prior to the commencement of this adversary proceeding: the Trustee, as such, and JP Morgan due to its claim against the Debtor. Also, there is no dispute that the Trustee was properly served with and did not oppose JP Morgan's motion for relief from the automatic stay. This adversary proceeding then is a "subsequent action between the same parties."

For the third element to be established, the Court must determine whether the issues raised in the Trustee's causes of action were litigated or could have been litigated at the time JP Morgan moved for relief from the automatic stay. Without providing any authority for its position, JP Morgan contends that the order granting relief from the automatic stay conclusively determined its perfected status in the Debtor's property resulting in precluding the Trustee from

5

thereafter pursuing actions in this proceeding under § 547 and § 544. The Trustee responds that (1) the issues encompassed in a motion for relief from the automatic stay are limited to the statutory grounds for such expressed in § 362(d), which include: lack of adequate protection of the creditor's interest; a debtor's lack of equity in the property and whether the property is necessary for an effective reorganization; (2) each of those grounds center on a basic legal threshold requirement of whether a creditor possesses a "colorable" claim to estate property; and (3) once a creditor proves that its claim is "colorable," a court will grant relief from the automatic stay to allow the creditor to fully pursue its federal or state law rights against the debtor or property of the estate without being exposed to liability for a violation of the automatic stay. In support of his argument, the Trustee primarily relies on *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26 (1st Cir. 1994).

Like this case, *Grella v. Salem* involved a chapter 7 trustee's attempt to avoid a bank's unperfected security interest in estate property on preferential transfer grounds. After being granted relief from the automatic stay, the creditor filed an adversary proceeding to determine the validity of its lien. In turn, the trustee filed an answer and a counterclaim against the creditor alleging that its interest in estate property was avoidable as a preferential transfer. In opposing the trustee's claim, the bank argued that the trustee was barred from pursuing his preference action based on grounds of either claim preclusion or issue preclusion because he failed to contest or file an objection to the bank's motion for relief from the automatic stay under § 362(d)(1), and that the validity of its security interest had already been decided when the bankruptcy court granted it relief from the automatic stay under § 362(d)(1).

Based on an issue preclusion analysis, the Court of Appeals held that a determination on a motion for relief from the automatic stay under § 362(d) is limited in scope and does not have preclusive effect on a trustee's subsequent lien avoidance claims. The Court in *Grella* reasoned that

> Congress included the provision for relief from stay under § 362(d), allowing bankruptcy courts to lift the stay as to certain creditors if grounds for relief are presented. . . .These grounds are the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization. 11 U.S.C. § 362(d). That the statute sets forth certain grounds for relief and no others indicates Congress' intent that the issues decided by a bankruptcy court on a creditor's motion to lift the stay be limited to these matters.

6

*Id*. at 31. The Court then went on to explain the significant procedural differences that exist between a motion for relief from the automatic stay and a preferential transfer claim as follows:

> The relief from stay procedures established by the Bankruptcy Rules also point to the limited scope of the hearing. Relief from stay is obtained by a simple motion, . . . and it is a "contested matter," rather than an adversary proceeding. . . . In contrast, all actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be limited in adversary proceedings. . . . To allow a relief from stay hearing to become more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a full scale adversary lawsuit . . . and would be inconsistent with this procedural scheme.
>
> . . . .
>
> Moreover, the Bankruptcy Code [in Section 546(a)(1)] specifically provides that a trustee has two years after appointment or until the close of the case to commence a § 547 preference action. A relief from stay proceeding, conversely, is usually commenced very shortly after the bankruptcy petition is filed, and, as explained above, must be completed no more than sixty days from the filing of the motion for relief. Forcing trustees to raise their counterclaims within that short period, usually during nascent stages of a bankruptcy case, would in effect allow movant creditors to drastically reduce the two-year limitations period set forth in the Code. Not only is this result patently unfair and inefficient, it renders the Bankruptcy Code's statutes of limitations provision irrelevant—a result we cannot endorse.

*Id*. at 33 (internal citations omitted). For these reasons, the Court held that

> a court hearing on a motion for relief from [the automatic] stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

*Id*. at 33-34. In applying its holding, the *Grella* Court pointed out that the order lifting the automatic stay entered by the bankruptcy court did not make any findings about the status of the

7

creditor's security interest in estate property. It explained that the court "did not, and indeed, could not adjudicate the substantive merits of either the creditor's claim or any possible defenses or counterclaims." *Id.* at 35.

The Court is persuaded by the reasoning in *Grella v. Salem*. Although its analysis is based on issue preclusion, it is nonetheless instructive and on point to the third element of res judicata – whether an issue exists in the subsequent action which was litigated or which should have been litigated in the prior action. *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). In *Browning*, the court explained that before deciding whether the claims "*should* have been brought" in a prior action, a court "must first consider whether those claims *could* have been brought in that forum." *Id.* at 772 (emphasis in original).

Several cases have reasoned that it is entirely appropriate for a party, including a trustee, to raise a defense or counterclaim in response to a motion for relief from the automatic stay. *G & B Aircraft Mgmt. v. Smoot* (*In re Utah Aircraft Alliance*, 342 B.R. 327 (B.A.P. 10th Cir. 2006). Yet, once a defense or counterclaim is raised, a court may exercise its discretion to consider such defenses or counterclaims on a limited basis in the context of determining whether to grant or deny a movant's request for relief from the automatic stay. *In re Hubbel*, 427 B.R. 789 (N.D. Cal. 2010) (finding no abuse of discretion in decision by bankruptcy court to deny movant relief from the automatic stay based on its conclusion on existing doubts about the validity of movant's security interest, which had to be determined through an adversary proceeding or by an evidentiary hearing). As explained by many cases, any such defenses or counterclaims raised during a § 362(d) hearing, would and should still be pursued in the context of an adversary proceeding for a final decision on their merits. *In re Hurst*, 409 B.R. 79, 83 (Bankr. D.Md. 2009) (explaining that "[w]hile a court may consider counterclaims that strike at the core of a movant's secured interest, any such decision should be preliminary, pending an adversary proceeding"); *Montgomery v. Dennis Joslin Co.*, (*In re Montgomery*), 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001) (noting that a court has discretion under § 362(d) to consider defenses or claims to a movant's interest as secured party but "the consideration cannot result in a preclusive adjudication on the merits of the underlying claim for avoidance"); and *In re Tally Well Service, Inc.*, 45 B.R. 149, 151 (Bank. E.D. Mich. 1984) (explaining that it is perfectly

8

appropriate for a court to consider counterclaims and defenses at a preliminary hearing under § 362(d) but that "it is not the proper time or place for a full *adjudication* of the trustee's claims against the creditor") (emphasis in original).

The Court therefore concludes that while the Trustee could have asserted his § 547 and § 544 causes of action as counterclaims to JP Morgan's motion for relief from the automatic stay, he was not required to do so. Likewise, even if the Trustee had raised such counterclaims, this Court would not have been required to rule on them. The Court finds that any determination under § 362(d) is narrowly limited to whether a creditor has a colorable claim against property of the estate. Any decision would be made solely on the statutory grounds expressed in § 362(d). The possible avoidability of a transfer under § 547 or a lien avoidance action based on a trustee's invocation of his strong arm powers under § 544 are beyond the scope of a court's limited inquiry under § 362(d). *Grella v. Salem*, 43 F.3d at 32 (collecting cases determining that a decision to lift the automatic stay does not involve a determination of counterclaims and thus those counterclaims are not precluded from being brought later); s*ee also In re Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) (noting that questions of preferential transfers under § 547 are not generally at issue in a § 362 hearing, but only whether there is a colorable claim on property) and *Johnson v. Righetti* (*In re Johnson*), 756 F.2d 738, 740-41 (9th Cir. 1985) ("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claims is not litigated during the hearing."), *overruled on other grounds by Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S. Ct. 1199 (2007).

Applying this reasoning to the facts in this proceeding, it is apparent to the Court that the order entered in the Debtor's bankruptcy case granting relief from the automatic stay to JP Morgan does not have preclusive effect on the Trustee's claims in this adversary proceeding. In its stay lift motion, JP Morgan merely alleged that it was a "holder of a mortgage on property owned by the Debtor." It did not allege that it held a perfected interest in the Debtor's property. Nor did it allege any other facts about the validity of its security interest. In addition, JP Morgan alleged facts asserting that it was entitled to relief from the automatic stay based on the statutory grounds provided under § 362(d)(1) and (2) because cause existed to terminate the stay because its interest was not adequately protected; the Debtor did not have any equity in the Property and

9

the Property was not necessary to an effective reorganization. The Trustee's failure to file a reply to JP Morgan's motion for relief from the automatic stay was, at most, an admission based on these grounds that JP Morgan possessed a colorable claim in the Debtor's property.

Likewise, the order entered by the court, which was prepared and submitted by JP Morgan, is limited to the following two paragraphs —

> JP Morgan Chase Bank, National Association . . . having filed a Motion For Relief From The Automatic Stay with respect to the property located at 29232 Lyndon St, Livonia, MI 48154-4526; and the approximate market value of the property is $85,000; and the current debt owing is approximately $179,435,00, which includes Movant's Attorney fees and costs for filing this Motion; and any surplus on the sale of this property shall be distributed pursuant to applicable state law and procedures; and any deficiency on the sale of this property shall be treated as an unsecured debt; and the Court being in receipt of the Motion and Certificate of No Response, and the Court being fully advised in the premises:
>
> IT IS HEREBY ORDERED that the Automatic Stay is hereby terminated as to Movant with respect to the property located at 29232 Lyndon St, Livonia, MI 48154-4526 to allow Creditor to commence or continue its federal and/or state law rights to the property. This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Bankruptcy Code.

(Def.'s Mot. Ex. D). Based on the language in the order, JP Morgan was permitted to begin litigation relative to the Property in an appropriate forum without any findings being made by this Court as to the validity of or the avoidability of JP Morgan's interest in the Property. There was no adjudication on the Trustee's rights to avoid JP Morgan's interest as a preferential transfer under § 547 or pursuant to the strong-arm powers under § 544. Therefore, entry of this order did not preclude the Trustee from challenging the validity of JP Morgan's interest in the Property in this subsequent adversary proceeding, and thus JP Morgan has not established the third element of res judicata.

The fourth and final element of res judicata requires that there be an identity of claims. "Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action."' *Sanders Confectionery Products, Inc., v. Heller Financial, Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). JP Morgan's motion for relief from the automatic stay

10

hinged on its assertions that the Debtor was in default of his loan agreement; its mortgage interest was not adequately protected; that there was no equity in the Property because the value of the Property was less than the balance due under the loan agreement and that the Property was not necessary to an effective reorganization. In order to establish these assertions, JP Morgan would have to rely on these alleged facts (and evidence), all of which go to its contractual relationship with the Debtor. These alleged facts and the evidence necessary to support them are not identical to those required under the Trustee's § 547 or § 544 actions. The allegations that underlie both those counts of the Trustee's complaint deal with the validity and avoidability of JP Morgan's interest in the Property due to its unperfected status under Michigan law. These are functionally and substantively different causes of actions from that asserted in JP Morgan's motion for relief from the automatic stay, and therefore, the issues under JP Morgan's motion and the Trustee's causes of action are not identical. Thus, the fourth and final element of res judicata is not satisfied. Viewing the facts in the light most favorable to the Trustee, the Court finds that there are no genuine issues of material fact that the Trustee's § 547 and § 544 claims are not barred by the doctrine of res judicata. Accordingly, JP Morgan's motion for summary judgment based on res judicata is denied.

B.   *Whether JP Morgan Possesses An Unsecured Interest In The Property*

    1.   <u>The Effectiveness of the Recorded Claim of Interest Under Michigan Law</u>

In his complaint, the Trustee alleged that the Lis Pendens recorded by JP Morgan constituted a transfer of the Debtor's interest in real property under 11 U.S.C. § 547. At the time he moved for summary judgment, however, the Trustee differently asserted that the transfer at issue and subject to avoidance under § 547 was the Claim of Interest recorded by JP Morgan, arguing it is ineffective under Michigan law because it does not comply with the recording requirements under Mich. Comp. Laws § 565.201 or § 565.451a. Even if the Claim of Interest was permitted to be recorded, the Trustee contends that it is insufficient and may not be used as a substitute to record and perfect JP Morgan's mortgage interest in the Property, which then remains unperfected because the original mortgage was never validly recorded in the proper county. The Trustee maintains that pursuant to either argument, the mortgage (i.e., the transfer)

11

is deemed to have been perfected "immediately before the date of filing of the petition" under § 547(e)(2)(C).

JP Morgan argues that the Claim of Interest with an attached copy of the original mortgage recorded on March 11, 2009, pursuant to Mich. Comp. Laws Ann. § 565.451a, was sufficient to perfect its interest in the Property, and thus because the recording date of the Claim of Interest occurred outside the 90 day statutory preference period, its interest is not subject to avoidance under § 547.

JP Morgan does not dispute that the Trustee has established four out of the five required elements of an avoidable preference as set forth in § 547(b). The fifth element is one of law i.e.: If JP Morgan's interest was properly perfected before the 90-day preference period, the Trustee would not be able to avoid the transfer because he could not establish that the transfer was made within the 90 day period. On the other hand, if JP Morgan's interest was perfected within the 90-day preference period, the Trustee would be able to successfully establish the remaining essential element under § 547(b)(4)(A).

In Michigan, perfection occurs upon recording. See Mich. Comp. Laws Ann. § 565.29 (West 1988) ("Every conveyance of real estate within the state . . . which shall not be recorded . . . shall be void as against any subsequent purchaser in good faith and for valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."). It is undisputed that the original mortgage was not recorded in the proper county. Instead, the document recorded consists of a Claim of Interest, which is in affidavit form and states the following:

> Brian Yoho, who is the attorney and agency for Washington Mutual Bank as servicing agent for Washington Mutual Bank, FA, being duly sworn, deposes and states as follows:
>
> 1. That this Claim of Interest is filed in accordance with the provisions of MCL 565.451a; which provides for giving and recording of notice relating to certain matters which may affect the title to real property in the State of Michigan and to claim of interest in land, respectively.
>
> 2. That in accordance with the provisions of the aforementioned sections, NOTICE IF HEREBY GIVEN Washington Mutual Bank as servicing agent for Washington Mutual Bank FA submits this Claim of Interest as to certain parcel of real property (Subject Property) located in the City of Livonia, County of Wayne,

> State of Michigan, more particularly described as follows:
>
> Lot 40, Marcy Ann Subdivision, recorded in Liber 86, Pages 67 and 68 of Plats, Wayne County Records.
> More commonly known as 29232 Lyndon St, Livonia MI 48154-4526
>
> 3. That on August 31, 2004, a mortgage was made by Haddi Lebbos and Julie Lebbos, Husband and Wife, to Washington Mutual Bank, FA, in the original principal sum of $160,000.00 (the Mortgage) (Exhibit A).
>
> 4. That the Mortgage was given as security for a note (Note) in the principal sum of $160,000.00 which was executed by Haddi Lebbos and Julie Lebbos, Husband and Wife.
>
> 5. That said Mortgage was recorded erroneously in Macomb County.
>
> 6. That the Mortgage held by Washington Mutual Bank as servicing agent for Washington Mutual Bank, FA had not been satisfied and there remains an outstanding balance of approximately $175,176.55.
>
> 7. That Washington Mutual Bank as servicing agent for Washington Mutual Bank, FA, hereby claims an interest in the above-reference property by virtue of the Mortgage given by Haddi Lebbos and Julie Lebbos, Husband and Wife.

(Def.s' Ex. B).

In support of their respective positions, the Trustee and JP Morgan rely on cases from Bankruptcy Courts in this District that reached opposite conclusions as to whether the recording of an affidavit pursuant to Mich. Comp. Laws Ann. § 565.451a could be deemed to perfect an interest in real property when an original mortgage document itself could no longer be used for recording purposes. The Trustee relies on *Lewis v. Pub. Serv. Credit Union* (*In re Neal*), 406 B.R. 288 (Bankr. E.D. Mich. 2009), which held that an affidavit recorded under Mich. Comp. Laws Ann. § 565.451a was ineffective to record or perfect a conveyance (i.e., a mortgage) in real property. JP Morgan, on the other hand, relies on *Camacho v. Homeq Serv. Corp.* (*In re Camacho*), 311 B.R. 186 (Bankr. E.D. Mich. 2004), which held that an affidavit of lost mortgage that recites facts affecting title to real property in Michigan may be recorded to perfect a mortgage interest. After a thorough review of *In re Neal* and *In re Camacho*, the Court is persuaded by *In re Neal* and determines that its analysis and conclusions should be applied here.

13

Mich. Comp. Laws Ann. § 565.451a states:

An affidavit stating facts relating to any of the following matters which may affect the title to real property in this state made by any person having knowledge of the facts or by any person competent to testify concerning such facts in open court, may be recorded in the office of the register of deeds of the county where the real property is situated:

> (a) Birth, age, sex, marital status, death, name, residence, identity, capacity, relationship, family history, heirship, homestead status and service in the armed forces of parties named in deeds, wills, mortgages and other instruments affecting real property;
>
> (b) Knowledge of the happening of any condition or event which may terminate an estate or interest in real property;
>
> (c) Knowledge of surveyors duly registered under the laws of this state with respect to the existence and location of monuments and physical boundaries, such as fences, streams, roads and rights of way of real property;
>
> (d) Knowledge of such registered surveyors reconciling conflicting and ambiguous descriptions in conveyances with descriptions in regular chain of title;
>
> (e) Knowledge of facts incident to possession or the actual, open, notorious and adverse possession of real property; or
>
> (f) Knowledge of the purchaser, or in the case of a corporation, of its president, vice president, secretary, or other duly authorized representative acting in a fiduciary or representative capacity, of real property sold upon foreclosure or conveyed in lieu of foreclosure of a trust mortgage or deed of trust securing an issue of bonds or other evidences of indebtedness, or of any mortgage, land contract or other security instrument held by a fiduciary or other representative, as to the authority of such purchaser to purchase the real property and as to the terms and conditions upon which the real property is to be held and disposed of.

In construing Mich. Comp. Laws Ann. § 565.451a, the court in *Neal* concluded:

> that the statute is clear enough on its face in describing the types of disclosures that may be made in an affidavit presented for filing and that a lost mortgage is not among them. It is equally clear that even if recorded, an affidavit of lost mortgage does not perfect a mortgage as if the original had been properly recorded.

14

406 B.R. at 292. The court in *Neal* further reasoned that Michigan's recording statutes

> apply to any instrument that conveys an interest in property and that the affidavit did not itself convey an interest in property. Therefore, it cannot be recorded to establish the conveyance or to perfect the conveyance. . . . Because the mortgage itself was not recorded, it was not perfected. Although a copy of the mortgage was attached to the affidavit, it did not contain an original signature and therefore did not meet the requirements for recording a real estate conveyance.

*Id*. (citing Mich. Comp. Laws Ann. § 565.201(1)(a)).

JP Morgan did not direct the Court's attention to a particular permissible category under Mich. Comp. Laws Ann. § 565.451a that its Claim of Interest falls into. A review of each one of categories under Mich. Comp. Laws Ann. § 565.451a indicates that none of them cover its recorded Claim of Interest. Like the affidavit of lost mortgage in *Neal*, the recordation of the Claim of Interest is not among the situations enumerated or permitted under Mich. Comp. Laws Ann. § 565.451a for the recording of an affidavit against real property. Therefore, it was not entitled to be recorded and is thereby insufficient to perfect JP Morgan's mortgage interest in the Property. *In re Neal*, 406 B.R. at 292; see also *Wells Fargo Home Mortgage, Inc. v. Richardson (In re Brandt)*, 434 B.R. 493, 501 (W.D. Mich. 2010) (explaining that under Michigan law, "[i]f a recorded document is not in compliance with law or was not entitled to be recorded, the record is a nullity and is "entirely inoperative" to provide notice) (citations omitted). This latter is what this Court agrees with and concludes in this proceeding.

2. <u>The other curative Michigan statutes relied on by JP Morgan are not applicable</u>

JP Morgan also argues that even if the Court finds that its Claim of Interest was not perfected, it is nonetheless valid under Michigan law by virtue of other Michigan statutes, citing Mich. Comp. Laws § 565.201(4) and § 565.604. Although the Trustee did not address this argument, the Court finds that neither one of these statutes are useful to JP Morgan.

Mich. Comp. Laws § 565.201(4) states that "Any instrument received and recorded by a register of deeds shall be conclusively presumed to comply with this act. The requirements contained in this act are cumulative to the requirements imposed by any other act relating to the recording of instruments." JP Morgan construes this statute to mean that its Claim of Interest was "conclusively established under the recording statutes" upon its acceptance and recording by

15

the Wayne County Register of Deeds. The Court disagrees. There is a difference between a recorded document, like the Claim of Interest, being conclusively presumed to comply with the requirements as to its form pursuant to Mich. Comp. Laws §§ 565.201 - 565.203 and one that is effective to properly perfect a mortgage interest in property.

> Mich. Comp. Laws § 565.604 provides:
>
> No conveyance of land or instrument intended to operate as such conveyance, made in good faith and upon a valuable consideration, whether heretofore made or hereafter to be made, shall be wholly void by reason of any defect in any statutory requisite in the sealing, signing, attestation, acknowledgment, or certificate of acknowledgment thereof; nor shall any deed or conveyance, heretofore or hereafter to be made, designed, and intended to operate as a conveyance to any religious, fraternal, scientific or benevolent society, or corporation, be wholly void by reason of any mistake in the name or description of the grantee, nor because of any failure to such society or corporation to comply with any statutory provisions concerning the organization of such society or corporation: Provided, Such society or corporation shall hereafter comply with the provisions of the statute touching the organization or incorporation of such societies; but the same, when not otherwise effectual to the purposes intended, may be allowed to operate as an agreement for a proper and lawful conveyance of the premises in question, and may be enforced specifically by suit in equity in any court of competent jurisdiction, subject to the rights of subsequent purchasers in good faith and for a valuable consideration; and when any such defective instrument has been or shall hereafter be recorded in the office of the register of deeds of the county in which such lands are situate, such record shall hereafter operate as legal notice of all the rights secured by such instrument.

JP Morgan did not provide any explanation or reasoning as to how Mich. Comp. Laws § 565.604 applies to cure its defective Claim of Interest. By its express language that statute seeks to provide an equitable remedy under certain circumstances. One circumstance addresses conveyances or instruments that will not be deemed wholly void if they are made in good faith and upon valuable consideration merely because of certain defects in the statutory requirements "in the sealing, signing, attestation, acknowledgment, or certificate of acknowledgment." The other circumstance pertains to a conveyance or instrument to religious, fraternal, scientific or benevolent society, or corporation that is defective. Neither one of these circumstances are at issue or relevant to JP Morgan's Claim of Interest in this proceeding. Even if they were present, JP Morgan exaggerates and misuses the relief provided by Mich. Comp. Laws § 565.604. This

16

statute recognizes that while a recorded instrument may be ineffective for the purposes intended, a party is provided with the right to use the recorded instrument or conveyance as evidence of an agreement as to the conveyance of the property in question in an equitable action to enforce such recorded instrument subject to the rights of a good faith purchaser. As a result, the Court determines that Mich. Comp. Laws § 565.604 is unavailing here.

For all these reasons, the recorded Claim of Interest failed to perfect JP Morgan's mortgage interest in the Property and thus the mortgage itself remained unperfected. Under § 547(e)(2)(C), the transfer is deemed to have been made immediately before the filing date of the Debtor's bankruptcy petition, which falls within the 90 day statutory preference period.

## Conclusion

For the reasons explained in this opinion, the Court concludes that JP Morgan's motion for summary judgment is denied and the Trustee's motion for summary judgment on his preference claim under § 547 is granted. The Trustee shall present an appropriate order.

**Signed on August 23, 2011**

                                                      **/s/ Walter Shapero**
                                         **Walter Shapero**
                                         **United States Bankruptcy Judge**